MICHAEL G. O'NEILL
(MO3957)
Attorney for Plaintiff
30 Vesey Street, Suite 301
New York, New York 10007
(212) 581-0990

**DOC #_____**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

Frederick Arrata

              **Plaintiff,**

          - against -

**Publicis, Inc., Publicis Groupe S.A., Lion Re:Sources, Inc., D'Arcy Masius Benton & Bowles Inc. and Jean-Marie Pillois,**

             **Defendants.**

------------------------------------------

]
]
] 04 Civ. (   )
]
]
]
] **Complaint and Jury Demand**
]
]
]
]
]

**05 CV 3092**

**JUDGE CASTEL**

Plaintiff, by his attorney, Michael G. O'Neill, alleges for his complaint against the defendants as follows:

1.      This is an action to recover damages for unlawful employment discrimination by the defendants against the plaintiff based on his national origin.

2.      This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(4), 28 U.S.C. §1367, and 42 U.S.C. §1981.

3.      Venue is properly laid in the Southern District of New York because some defendants "reside" within the Southern District of New York within the meaning of 28 U.S.C. §1391.

4.      Plaintiff is an American citizen of Lebanese descent.

5.     The defendant Publicis, Inc. ("Publicis New York") is a corporation formed under the laws of the State of New York.

6.     The defendant Publicis Groupe, S.A. ("Publicis France") is, upon information and belief, a corporation formed under the laws of the country of France.

7.     The defendant Lion Re:Sources, Inc. ("Lion") is a corporation formed under the laws of the State of New York.

8.     The defendant D'Arcy Masius Benton & Bowles, Inc. ("D'Arcy") is upon information and belief a corporation or other business entity.

9.     The defendant Jean-Marie Pillois ("Pillois") is an individual.

10.     At all relevant times, Pillois has been the Vice President, Internal Audit & Business Improvement of Public France.

11.     Upon information and belief, all of the corporate defendants are related entities.

12.     On about October 1, 2003, plaintiff became employed by one or more of the corporate defendants. Plaintiff was offered employment in a written employment offer signed by Pillois on Publicis France letterhead. According to the employment offer, plaintiff was hired as the "Director of Internal Audit and Business Improvement – North America." The offer letter did not specifically identify the corporate entity that would employ plaintiff, but it did welcome him to the "Publicis Groupe" and it specified that he would be reporting directly to Pillois.

2

13.     Upon information and belief, Publicis New York is the principal corporate and administrative presence of Publicis France in New York. The Human Resources functions of Publicis affiliates are performed by Lion, and plaintiff's W2 form indicates that he was paid by D'Arcy.

14.     Further upon information and belief, the corporate defendants conduct their personnel and administrative activities as if they were a single business unit and without regard to corporate identities. As such, plaintiff alleges that he was employed by all the corporate defendants.

15.     Although plaintiff's national origin is Lebanese, he has lived in the United States since he was one year old and grew up in Brooklyn, NY. Culturally he is indistinguishable from any other American Citizen from Brooklyn, and, because of his last name, he is generally regarded by others to be of Italian descent.

16.     When plaintiff was hired by Pillois, the subject of plaintiff's national origin was never discussed.

17.     Shortly after being hired, Pillois started making numerous slurs against Arabs, including Lebanese. Pillois, unaware that plaintiff was Lebanese, would make remarks to the effect that all Arabs were stupid or terrorists or that Lebanese merchants were thieves. Pillois frequently spoke to plaintiff about the low regard in which Arabs were held in France. Pillois made it perfectly clear that he was in full accordance with that opinion.

18.     During this time, Pillois frequently praised plaintiff's job performance

3

and complimented him on his work.

19.     In about November, 2004, in a meeting with Pillois and Pillois' superior, plaintiff mentioned that he was related to Carlos Ghosn, the well known Lebanese CEO of a Renault-Nissan.  Plaintiff wondered whether the connection might be useful to obtain business from Renault.  In the course of this conversation, plaintiff acknowledged that he was also Lebanese.  Although Pillois' superior expressed interest, Pillois seemed irritated by the conversation.

20.     Later, after the meeting, Pillois scolded plaintiff, claiming that he (plaintiff) had embarrassed not only himself, but Pillois, by revealing that he was Lebanese to Pillois' superior.  In fact, the next day Pillois told plaintiff that Pillois had not invited plaintiff out to dinner with Pillois' superior the evening before because plaintiff was related to Ghosn.  Pillois disparaged Ghosn, telling plaintiff that it didn't matter that Ghosn was CEO of Renault because he's still a "fucking Arab."

21.     Thereafter, Pillois' attitude toward plaintiff changed radically.  He continued to disparage Arabs and Lebanese and frequently berated plaintiff on account of his national origin.  Pillois almost seemed to relish insulting plaintiff and Arabs.  On one occasion, plaintiff reproached Pillois for making a racist comment, and Pillois responded by stating that he (Pillois) was French and that "we can say anything – in France, we do not care about these things like people in the US do."

22.     Pillois' comments about Arabs were objectively offensive and plaintiff was actually offended by them.  Pillois' comments were severe and frequent

4

enough to have a negative effect on plaintiff's work environment.

23.     If the corporate defendants had an anti harassment policy, it was never communicated to the plaintiff. Since plaintiff was unaware of any policy for redressing Pillois' behavior, plaintiff complained a number of times to Pillois' superior, who promised to talk to Pillois. Plaintiff does not know whether Pillois was spoken to, but Pillois' behavior never changed.

24.     On January 21, 2005, plaintiff appeared for work but was unable to enter his office because the lock on his office door had been changed. When plaintiff inquired, he learned that he had been terminated, without notice and without cause.

25.     Plaintiff had a number of personal possessions in his office, including his original diplomas evidencing his college and post graduate degrees and other awards and commendations that plaintiff had acquired during his career. Not only were these objects irreplaceable, but they are of great sentimental and emotional value to the plaintiff. Plaintiff has been unable to recover these possessions.

**Claim One**

26.     Plaintiff claims that the defendants subjected plaintiff to a hostile work environment on account of his national origin, in violation of 42 U.S.C. §1981, the New York State Executive Law, and Article 8 of the New York City Administrative Code.

**Claim Two**

27.     Plaintiff claims that the defendants terminated plaintiff's employment

5

on account of his national origin, in violation of 42 U.S.C. §1981, the New York State

Executive Law, and Article 8 of the New York City Administrative Code.

## Claim Three

28.     Plaintiff claims that defendants converted his personal possessions in

his office.

**WHEREFORE**, plaintiff demand judgment as follows:

a)   Awarding plaintiff a money judgment for his damages, including but not

limited to lost wages, lost benefits, other economic damages, the value of his personal

possessions, shame, humiliation, embarrassment and mental distress;

b)   Awarding plaintiff punitive damages and his costs and a statutory attorneys'

fee as provided by law;

c)   Granting such further and additional relief as the Court deems just and

appropriate under the circumstances.

Dated: New York, New York
       March 22, 2005

                              MICHAEL G. O'NEILL
                              (MO3957)


                              Attorney for Plaintiff
                              30 Vesey Street, Suite 301
                              New York, New York 10007
                              (212) 581-0990

## JURY DEMAND

Plaintiff demands trial by jury in this action.

MICHAEL G. O'NEILL
(MO3957)

Attorney for Plaintiff
30 Vesey Street, Suite 301
New York, New York 10007
(212) 581-0990